# Exhibit A

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:*   -   TORT   -   MOTOR VEHICLE TORT -
CONTRACT   -   EQUITABLE RELIEF   -   OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX ss.

SUPERIOR COURT
CIVIL ACTION
No. *12 - 898*

Robert Gorman

................................................................................................ , Plaintiff(s)

v.

Yankee Clipper Council, Inc., Boy Scouts
of America, and Randy D. Larson .............................................. , Defendant(s)

## SUMMONS

To the above named Defendant:    Yankee Clipper Council, Inc.
Boy Scouts of America
You are hereby summoned and required to serve upon  Harry CC Beach

plaintiff's attorney, whose address is _____ 30 Walpole St., Norwood MA _____ , an answer to the
02062
complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

_____ Salem _____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, BARBARA J. ROUSE   , Esquire, at Salem, the
day of                                , in the year of our Lord two thousand

A TRUE COPY, ATTEST

DEPUTY SHERIFF

*Thomas H. Driscoll Jr.*

Clerk

LS

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on_____ , 20     . I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (see Mass. R. Civ. P. (d) (1-5):

_____

_____

_____

Dated:                 , 20     .                    _____

N.B.    TO PROCESS SERVER:-
        PLEASE PLACE <u>DATE</u> YOU MAKE SERVICE ON DEFENDANT IN
        THIS BOX <u>ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.</u>

        ┌─────────────────────────────────────┐
        │                                     │
        │                              , 20     .│
        │                                     │
        └─────────────────────────────────────┘

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.

SUPERIOR COURT
CIVIL ACTION
No.

Plaintiff(s)

Defendant(s)

**SUMMONS**
(Mass. R. Civ. P. 4)

# Commonwealth of Massachusetts
## County of Essex
## The Superior Court

CIVIL DOCKET # **ESCV2012-00897-A**
Courtroom Civil A - CtRm H - Room 5500

RE:   Gorman v Yankee Clipper Council Inc et al
TO:

Harry C Beach, Esquire
30 Walpole Street
Norwood, MA 02062

### SCHEDULING ORDER FOR F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue **02/23/2014**.

| STAGES OF LITIGATION | DEADLINES | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | 08/02/2012 | 08/02/2012 | |
| Response to the complaint filed (also see MRCP 12) | | 09/01/2012 | |
| All motions under MRCP 12, 19, and 20 | 09/01/2012 | 10/01/2012 | 10/31/2012 |
| All motions under MRCP 15 | 09/01/2012 | 10/01/2012 | 10/31/2012 |
| All discovery requests and depositions served and non-expert depositions completed | 02/28/2013 | | |
| All motions under MRCP 56 | 03/30/2013 | 04/29/2013 | |
| Final pre-trial conference held and/or firm trial date set | | | 08/27/2013 |
| Case shall be resolved and judgment shall issue by **02/23/2014** | | | 02/23/2014 |

- The final pre-trial deadline is <u>not the scheduled date of the conference</u>.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 05/07/2012

Thomas H. Driscoll Jr.
Clerk of the Court

Telephone: (978) 744-5500

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130 --Check website as to status of case: http://ma-trialcourts.org/tcic 1104677 inexxi01 vernavad

MAY-31-12   09:16AM   FROM-essex superior ct civil clrk        9787410691        T-472   P.001/001   F-039

| CIVIL ACTION COVER SHEET | TRIAL COURT OF MASSACHUSETTS SUPERIOR COURT DEPARTMENT | DOCKET NO. 12 - 897 |
|---|---|---|
| | COUNTY OF ESSEX | |

| PLAINTIFF(S) ROBERT GORMAN | DEFENDANT(S) YANKEE CLIPPER COUNCIL, INC., BOY SCOUTS OF AMERICA, and RANDY D. LARSON |
|---|---|

| Type Plaintiff's Attorney name, Address, City/State/Zip Phone Number and BBO# | Type Defendant's Attorney Name, Address, City/State/Zip Phone Number (If Known) |
|---|---|
| Harry C. Beach, 30 Walpole Street, Norwood, MA 02062 BBO#547893 | A |

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B22 Employment Discrimination - Fast Track | | | ⊙ [ ] Yes  ⌀ [ ] No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
 1. Total hospital expenses                                    $ _____
 2. Total doctor expenses                                      $ _____
 3. Total chiropractic expenses                                $ _____
 4. Total physical therapy expenses                            $ _____
 5. Total other expenses (describe)                            $ _____
B. Documented lost wages and compensation to date             $ _____
C. Documented property damages to date                        $ _____
D. Reasonably anticipated future medical expenses             $ _____
E. Reasonably anticipated lost wages and compensation to date $ _____
F. Other documented items of damages (describe)               $ _____
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

*FILED IN THE SUPERIOR FOR THE COUNTY OF ESSEX MAY - 4 2012 Superior Court ... CLERK*

Total $ _____

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

| Loss of employment and related compensation; emotional distress | $250,000.00 |
|---|---|
| | TOTAL $.............. |

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

None

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____     Date:   May 3, 2012

A.O.S.C. 3-2007

1

## COMMONWEALTH OF MASSACHUSETTS

Essex, ss.

**Superior Court**
**Trial Court** $12-897$
**Department**
**Civ. No.**

*******************************
**ROBERT GORMAN, Plaintiff,**

**v.**

**YANKEE CLIPPER COUNCIL, INC.,**
**BOY SCOUTS OF AMERICA, and,**
**RANDY D. LARSON, Defendants.**
*******************************

## CIVIL COMPLAINT

Plaintiff charges his former employer and supervisor with wrongfully terminating his employment because of his handicap or perceived handicap; and with retaliating against him because of his handicap or perceived handicap and his assertion of rights regarding his handicap, including his right to reasonable accommodations. In addition, plaintiff charges that the individual defendant intentionally inflicted emotional distress upon him post-termination.

## PARTIES

1. The plaintiff Robert Gorman ("Gorman") is an adult citizen of the United States, and currently a resident of Lincoln, Rhode Island.

2. The defendant Yankee Clipper Council, Inc., Boy Scouts of America ("the Council"), is a Massachusetts corporation having its principal place of business at 36 Amesbury Road, Haverhill, Essex County, Massachusetts, and which conducts business in the Commonwealth of Massachusetts. At all relevant times, defendant Council employed more than six (6) persons.

1

3.     The defendant Larson is an adult citizen of the United States, and upon information and belief a resident of Merrimac, Essex County, Massachusetts. At all relevant times, Larson was the Chief Executive Officer and a corporate officer of defendant Yankee Clipper Council, and a Scout executive. On information and belief, defendant Council terminated the employment of defendant Larson in June 2010 because of certain misconduct, malfeasance, or unacceptable performance by Larson.

4.   Gorman was employed by defendants in defendants' Haverhill, Massachusetts offices at the time they terminated him.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to Massachusetts General Laws ch. 151B, §§ 1, 4 and 9, and state tort law. Venue is proper in this Court pursuant to M.G.L. ch. 151B, §9.

6.     This Court has personal jurisdiction over defendants as a consequence of their intentional and sustained acts and omissions in the Commonwealth of Massachusetts out of which the claims set out below arose, and defendants' residence and continuing presence in the Commonwealth.

## ALLEGATIONS COMMON TO ALL COUNTS

7.     Plaintiff Gorman's date of birth is October 24, 1946; he was 62 years old in May 2009, when defendants fired him, and is 65 years old at the filing of this Complaint.

8.     Gorman is an Eagle Scout, and the recipient of the Boy Scouts' prestigious Silver Beaver Award. The Silver Beaver Award is a distinguished service award given to adult leaders who have made an impact on the lives of youth through service given to a Boy Scouts Council.

9.     Gorman is a college graduate and an experienced businessman.

2

10.   Gorman was employed by defendants as a District Executive, initially hired into the position in August 2006.  His assigned place of work was the Council's headquarters in Haverhill, Massachusetts.

11.   Gorman's compensation included a monthly salary, monthly car and cell phone allowances, and the reimbursement of expenses related to work meals and mileage.

12.   Gorman was in good standing in terms of his employment with defendants leading up to his heart attack in August 2008.

13.   In August 2008, Gorman suffered a heart attack and consequently underwent cardiac surgery.

14.   As a consequence of his heart attack, Gorman became disabled from his work with defendants.  Gorman notified defendants of his disability. As a result of his disability Gorman was out of work through the end of 2008. Gorman also suffered with diabetes and coronary heart disease in this period, as defendants also knew.

15.   Gorman was able to and so returned to work with the defendants in January 2009, even as he continued with cardiac rehabilitation.  Gorman's physician in January 2009 advised defendants to provide Gorman with reasonable accommodations regarding Gorman's disabilities.  The accommodations included restrictions regarding Gorman's lifting of certain weight and his wearing a tie.

16.   Defendant Larson was Gorman's supervisor at all relevant times, including before Gorman's August 2008 heart attack, during Gorman's recovery, following Gorman's return to work in January 2009, and continuing until he fired Gorman in May 2009.

17.   After Gorman's return to work in January 2009, defendant Larson treated Gorman more critically, negatively, and erratically than Larson had treated Gorman before Gorman had his heart attack in August 2008.

18.   For example, on or about Tuesday, April 7, 2009, Larson met with Gorman and initiated a performance review of Gorman's work.  During the review, defendant Larson asked Gorman for a list of prospects ("Friends of

3

Scouting"). Gorman said he would have the list for Larson by the end of the week. Larson said that was OK.

19. On Wednesday, April 8, 2009, Larson sent Gorman an email that criticized Gorman for not submitting the *Friends of Scouting* list the day before. In the same email, Larson listed 10 "critical priorities" on which (in his view) Gorman needed help. Larson, however, had failed to identify or address these "critical priorities" when he sat down with Gorman the day before.

20. Gorman submitted his *Friends of Scouting* list to defendant Larson on Thursday, April 9, 2009. Larson in turn praised Gorman for the "excellent" list.

21. On Friday, April 10, 2009, Gorman explained to Larson why he had not submitted the list of prospects during their April 7th meeting, saying he had been waiting for input from the Aquila District's nominating committee, which had been scheduled to meet April 8th.

22. Defendant Larson responded to Gorman by email on Saturday, April 11, 2009. In his email, Larson claimed that Gorman's explanation "is simply not acceptable, nor is it believable." Gorman understood Larson to be claiming that Gorman had lied in explaining himself about submitting the list.

23. In the same email (para. 22 above), defendant Larson directed Gorman to attend a 7:30 a.m. meeting with him two days later, on Monday, April 13, 2009, to discuss Larson's "critical priorities" for Gorman.

24. At the time of this instruction to Gorman, Larson knew that he had previously approved Gorman's vacation leave for the period April 13-17, 2009, for a family vacation.

25. For several days leading up to April 22, 2009, Gorman experienced great stress and at least two anxiety attacks as a result of defendant Larson's critical and erratic behavior towards him, and Gorman's anticipation of returning to work after his vacation.

26. On April 22, 2009, Gorman treated with his primary care physician, Dr. Gary Coles, because of the stress and anxiety attacks associated with Gorman's worrying about defendant Larson's treatment of him.

4

27.    That same day, Dr. Coles wrote a letter that Gorman gave to defendant Larson, in which Dr. Coles determined that Gorman was suffering from "extreme stress related anxiety attacks," which were detrimental to Gorman's health. Dr. Coles advised defendant Larson that he (Coles) would not permit Gorman to return to work until the stress could be alleviated. Dr. Coles told Gorman that the stress affected his cardiac condition.

28.    When defendant Larson learned that work-related stress was affecting Gorman's health, Larson reacted by telling Gorman that his pay would be stopped and that his job was now at risk.

29.    Specifically, defendant Larson wrote Gorman on April 29, 2009, to tell him that he (Gorman) had "exhausted [his] job guarantee and [his] salary continuation . . . [and was] not eligible for salary continuation and, unless or until he returned to [his] position on a full-time unrestricted basis will not receive compensation beyond April 21st[, 2009]."

30.    In his April 29th letter, defendant Larson told Gorman that going forward, Gorman was obliged to reimburse defendant Council for health insurance premiums and that, if Gorman did not, Gorman's health insurance could be terminated.

31.    In his April 29th letter, defendant Larson also referenced that "at some point [Larson] will have to consider [his] options for filling [Gorman's] position with a new hire."

32.    Defendant Larson, in the same April 29th letter, referred to a "decision . . . to terminate [Gorman's] employment," despite the fact that no grounds had been presented to justify the termination of Gorman's employment with defendants.

33.    In sum, defendant Larson responded on April 29th to Dr. Coles' letter of April 22, 2009, by terminating Gorman's pay, shifting the expense of Gorman's health insurance entirely to him, and threatening Gorman's job.

34.    Because of defendant Larson's April 29th letter, Gorman believed he was going to lose his job and health insurance because of his disability and the risks associated with his work-related disability. On his own, Gorman

5

notified the Massachusetts Commission against Discrimination ("MCAD") and the Office of the Attorney General for the Commonwealth of Massachusetts, about this situation by letter dated May 5, 2009. *See* attachment at Tab 1.

35.   In his May 5th letter, Gorman informed the MCAD and the Attorney General that he believed defendants were discriminating against him because of his disability and age. Gorman sent his letter to the Attorney General's Office, and sent copies to defendant Larson and to Marty Kadel, the Human Resources Director for the Northeast Region of the Boy Scouts of America, so they would know about his concerns.

36.   In addition, Gorman responded to defendant Larson's April 29th letter by sending Larson an email on May 7, 2009. In it, Gorman told defendant Larson that Larson's stopping his pay and health benefits caused Gorman "significant damage." Gorman also advised defendant Larson in the May 7th email that he expected to return to work with reasonable accommodations in the near future.

37.   Defendant Larson responded to Gorman the following week, in a letter that communicated Larson's unhappiness with Gorman's medical/health situation. In his May 13, 2009, letter, Larson stated that the absences associated with Gorman's August 2008 heart attack "exceeded both the job guarantee and salary continuation benefits" as understood by Larson.

38.   Although defendant Larson's letter was dated May 13, 2009, Gorman received it on May 12, 2009, which meant that Larson wrote it before May 12, 2009.

39.   Defendant Larson also stated in his letter dated May 13, 2009 that Gorman would not be paid by defendants if he could not return to work in a "full, unrestricted" capacity. This statement by Larson communicated to Gorman that Larson would not accept Gorman's returning to work with reasonable accommodations.

40.   Defendant Larson further wrote that he (Larson) was concerned about defendants' liability if Gorman returned to work without "full medical clearance," and that defendants required a doctor's statement representing that

6

Gorman was "able to perform the essential duties of the job without restriction." Again, Gorman understood from what Larson wrote that he (Gorman) would not be given reasonable accommodations for his condition.

41. Gorman responded to defendant Larson's letter (dated May 13th, but received May 12th) by email on May 12, 2009. In Gorman's response, he pointed out that Larson had been critical of Gorman's work since Gorman returned to work in January 2009; that disability laws protected Gorman from disability-related discrimination; and that defendants had a duty to provide Gorman with reasonable accommodations.

42. By letter dated May 16, 2009, defendants fired Gorman from his job. Specifically, defendant Larson on behalf of the Council wrote that he was "shocked and disappointed at [Gorman's May 12th email's] content and tenor." Defendant Larson also wrote,

*Clearly, any trust or ability to continue in a working relationship together has been destroyed and, therefore, I have determined that it is in the best interests of the Council to end your employment at will. Consequently, effective today, your employment has been terminated.*

43. Defendants, through Larson, fired Gorman on May 16, 2009, which was a mere four (4) days after Larson received an email from Gorman in which Gorman claimed his right to protection under Massachusetts and Federal disability laws. According to Larson, Gorman's assertion of rights "destroyed" Larson's ability to work with Gorman.

44. Defendants, through Larson, fired Gorman less than two (2) weeks after they learned that Gorman had filed a complaint of discrimination against them with the MCAD and the Attorney General.

45. In their termination letter, defendants did not identify any performance- or conduct-based reason to fire Gorman.

46. Defendant Larson's termination letter of May 16, 2009, also stated his view that Gorman would not be allowed to work any other Boy Scout councils unless he could do so without restrictions or accommodations.

7

47.     Defendants, through Larson, continued to retaliate against Gorman when Gorman filed an application for unemployment benefits later in May 2009. On information and belief, Larson told the Department of Unemployment Assistance that defendants had not fired Gorman, but that Gorman was still employed there (although on a disability leave of absence).

48.     On information and belief, defendant Larson lied to the DUA in order to have DUA deny Gorman unemployment benefits because of Gorman's alleged continuing employment with defendants. After Gorman provided DUA with defendants' termination letter of May 16, 2009, DUA awarded Gorman unemployment benefits.

49.     Defendants' termination of Gorman has damaged Gorman greatly. Gorman lost his job, salary, and job benefits, including health insurance.

50.     Defendants' termination of Gorman caused Gorman great stress and anxiety, to the extent that Gorman was treated in Milford Regional Hospital on two occasions (July 24, 2009 and August 30, 2009) for unmanageable stress, anxiety, and anger. In addition, Gorman was and continues to be treated for anxiety and depression, and has been treated by clinical therapists to address the emotional distress associated with his termination by defendants.

51.     Since defendants' firing of Gorman, Gorman has been unemployed except for certain minimal work he has done as a scissor sharpener. He is currently living in subsidized housing and is on food stamps.

52.     On or about September 29, 2009, plaintiff timely filed a Statement of Claim/Charge of Discrimination with the Massachusetts Commission against Discrimination with respect to the wrongful termination of his employment by defendants. See attachment at Tab 2 hereto.

53.     More than ninety (90) days have elapsed since plaintiff filed his Charge with the MCAD; the MCAD has, to date, failed to act upon said Charge.

8

## CLAIMS

### Count I (Disability Discrimination – Defendant Council)

54.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

55.    Defendants' termination of plaintiff's employment in May 2009 constituted discrimination against him because of his handicap or perceived handicap, and therefore constitutes a violation of plaintiff's right to be free from discrimination in employment pursuant to M.G.L. ch. 151B.

56.    Defendants' conduct proximately caused damage to plaintiff, including the loss of compensation and benefits, and emotional distress.

### Count II (M.G.L. ch. 151B Retaliation/Intimidation – Defendants Council and Larson)

57.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

58.    Defendants' termination of plaintiff's employment in May 2009 constituted retaliation against him because of his handicap and/or perceived handicap and because of his assertion of rights under M.G.L. ch. 151B, and therefore constitutes a violation of plaintiff's right to be free from such retaliation and intimidation pursuant to M.G.L. ch. 151B.

59.    Defendants' conduct proximately caused damage to plaintiff, including the loss of compensation and benefits, and emotional distress.

### Count III (*Respondeat Superior*)

60.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

9

61. During the relevant period, defendant Larson was the executive director of the defendant Council, and was plaintiff's immediate supervisor with respect to plaintiff's employment.

62. The acts committed by defendant Larson in connection with plaintiff's employment were committed within the scope of Larson's employment by the defendant Council, and therefore the Council is vicariously liable for Larson's conduct.

63. Defendant Council is therefore vicariously liable for the damages plaintiff suffered as a result of defendant Larson's illegal conduct relating to plaintiff's employment.

## Count IV (Intentional Infliction of Emotional Distress – Larson)

64. The Plaintiff repeats and realleges the allegations above as if fully stated herein.

65. Defendant Larson engaged in extreme and outrageous conduct when, soon after he terminated plaintiff's employment on May 16, 2009, he reported to the Massachusetts Department of Unemployment Assistance that plaintiff had not been terminated from his employment at defendant Council but was still employed there.

66. Upon information and belief, defendant Larson lied to DUA in an effort to disqualify plaintiff from receiving unemployment benefits, at a time Larson knew that plaintiff had no income source other than his employment with defendant Council.

67. Defendant Larson's conduct in this respect proximately caused plaintiff severe emotional distress and other damages.


**WHEREFORE**, Plaintiff prays that this Honorable Court:

(1) Enter judgment in his favor and against the defendants, jointly and severally, on Counts I-IV;

10

(2) Award damages as allowed by law, plus such prejudgment interest as the law may require or allow;

(3) Award plaintiff costs and his attorneys' fees;

(4) Award punitive damages; and,

(5) Grant such other and further relief as this Court may deem just and appropriate.

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

The plaintiff, **Robert Gorman**, by his counsel,

Harry C. Beach BBO#547893
**Law Office of Harry C. Beach**
30 Walpole Street
Norwood, MA 02062
781.255.5573
AttyBeach@gmail.com, *or*
HBeach@HarryBeach.com

May 3, 2012

11

Bob Gorman
Apartment #107
Building #7 Wake Robin Road
Lincoln, Rhode Island 02865

May 5, 2009

Massachusetts Commission Against Discrimination
Boston, MA 02108
Re: Yankee Clipper Council Boy Scouts of America, Haverhill, MA

Gentleman:

First I am making it very clear that I am charging Randy Larson the Scout Executive of the Yankee Clipper Councill with Unlawful Harassment. I have been harassed by Randy Larson under 2 different circumstances: My age..62 and my Disability. (Heart Failure and Congestive Heart Failure.)

I would like Randy Larson Removed from his position as the Scout Executive for the Yankee Clipper Council and forced to retire from the profession of Scouting.
In my opinion Randy really hurts our program. He does not strengthen it. His management style without question is unreasonable.

It has been my intention to retire with a pension from Scouting until age 66.
To that end I wish to continue to be paid as though I were working until age 66.(October 24, 2012)
I would expect this continuation to include all medical, dental, and vision care, and full retirement funds.

I have sent this same package of information to the HR Department of the Boy Scouts of America..
I have asked them for their support of bring a determination against the Yankee Clipper Council and Randy Larson. (Yankee Clipper Council, BSA is located in Haverhill Massachusetts.)

To date Randy has cut me off writing "I will not be receiving compensation effective April 22, 2009." See Randy Larson's April 29th letter to me. Enclosed.

I have also enclosed a complete copy of the Yankee Clipper Handbook which says NOTHING about the council's inability to compensate me through a 2nd sickness. (What would happen if I were to have 2nd heart attack.?)

I have also included the fax from my Dr. removing me from work with the Yankee Clipper Council.


You will also find:

A complete explanation (4 pages) of what has happened to me and my employment with the Yankee Clipper Council from the Spring of 2008 until the present time. It outlines all dates as best I can remember them.

I have also included a FOS Listing of community phase (of fund Raising) people and how pleased he is with this list. As well as the latest FOS report showing that I am ahead of last year with monies and pledges brought into the Yankee Clipper Council.

The next thing you will find is his first letter to me demanding that I meet with him at 7:30 AM before the staff meeting at 9:00 AM. and you will find my return answer to him explaining what had happened after the review and my response to his email. He again wrote an email to me (enclosed) essentially calling me a liar for essentially doing what he wanted me to do. This is clearly punishment.

The next week I was on a scheduled and approved vacation, and I started to have severe anxiety attacks to including having a difficult time , and chest pain. I went to see my Dr who doubled my depression and anxiety medication and told me he was "removing me from work in the Yankee Clipper Council"

There is a lot of material here. In order to make it easier for my reader I have included the latest letters to me first. (From Randy Larson)
First several pages of an explanation of what happened to me from the Spring 2008 forward into 2009.

(In thinking about it, I think it best and less confusing to include an outline of letters emails etc.)

This is all very painful for me. I have been in love with Scouting since I was 8 years old. I am an Eagle Scout and I hold the Silver Beaver Award besides having my Wood Badge Beads and I am a certified Day Camp Director. In my professional career I have never received less then an Expected in my performance reviews.

If I do not call attention to the management style of Randy Larson he will continue to make life miserable for the office staff and professional staff.

I have it on excellent authority that within the past 2 years Yankee Clipper Council and Randy Larson was sued by our former book keeper and she and the council settled for $75,000. This has NOT deterred him from his poor and threatening management style.


Thanks Again,
I'll be looking forward to your response.


Bob Gorman

Outline
Materials Enclosed
Robert Gorman

**Cover Letter to Office of Mass Commission Against Discrimination**

**Certificate of Completion BSA
Unlawful Harassment Prevention**

**Fax Letter from Gary M. Coles MD  to Randy Larson 4/22/09**

**Randy Larson Letter to me 4/29/09
re: loss of job guarantee and continuation**

**Mat 1, 2009 Yankee Clipper FOS report**

**FOS Community Prospect List**

**Email #1 From Randy Larson**

**Email #2 From Randy Larson
and my response back to him**

**What Happened.
My story from Summer 2008
To the present time.**

**Hand Book for
Yankee Clipper Council
Professional Employees**

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place , Boston, MA 02108**
**Phone:  (617) 994-6000 Fax:  (617) 994-6024**

| | |
|---|---|
| MCAD DOCKET NUMBER: 09BEM02739 | EEOC/HUD CHARGE NUMBER:  16C-2009-02535 |
| FILING DATE: 09/30/09 | VIOLATION DATE: 05/16/09 |

Name of Aggrieved Person or Organization:

Robert  Gorman
c/o Atty. Harry C. Beach
30 Walpole Street
Norwood, MA 02062
Primary Phone: (781)255-5573 ext. _____

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:

Yankee Clipper Council, Boy Scouts of America
Attn: Director of Human Resources
36 Amesbury Road
Haverhill, MA 01830-2802
Primary Phone: (800)459-0575 ext. _____

Randy D. Larson, Individually
c/o Yankee Clipper Council, Boy Scouts of America
Attn: Director of Human Resources
36 Amesbury Road
Haverhill, MA 01830-2802
Primary Phone: (800)459-0575 ext. _____

No. of Employees:        25+

Work Location: Boston, MA

Cause of Discrimination based on:
Age, Age of Complainant (DOB: 10-24-1946)  Disability, Heart Disease (including hypertension, hypotension, etc);
Disability, Diabetes;  and  Paragraph 4, Retaliation.

The particulars are:
I, Robert  Gorman, the Complainant believe that I  was discriminated against by Yankee Clipper Council, Boy Scouts of America and  Randy D. Larson, Individually, on the basis of Age, Disability and Retaliation. This is in violation of M.G.L. 151B Section (4) Paragraph 16, 1B, 4, 4A and ADA.

see attached

MCAD Docket Number 09BEM02739, Complaint

RECEIVED

SEP 3 0 2009

MCAD

# LAW OFFICES OF HARRY C. BEACH

30 Walpole Street, Norwood, Mass. 02062          Direct Dial: 781.255.5573
                                                 Cell:        617.968.4531
E-mail AttyBeach@aol.com                         Fax:         781.769.6989
Website: HarryBeach.com

September 29, 2009

Intake Manager/New Claims
Massachusetts Commission against Discrimination
Room 601, One Ashburton Palce
Boston, MA 02108

>      Re:     **Statement of Claim/Charge of Discrimination**
>              **Robert Gorman v. Yankee Clipper Council, Inc., Boy Scouts of**
>              **America, and Randy D. Larson** (new matter)

Dear Sir/Madam:

On behalf of the Charging Party, Robert Gorman, you will find enclosed a
**Statement of Claim** against the referenced Respondents, Yankee Clipper Council, Inc.,
Boy Scouts of America, and Randy D. Larson. As you will see, the Claim involves the
Respondents' discrimination (disability and age) against Mr. Gorman in connection with
his employment as District Executive. The discrimination and related retaliation - the
latter arising from Mr. Gorman's asserting his right to be free from disability and age
discrimination - culminated in Respondents' terminating Mr. Gorman's employment by
letter dated May 16, 2009.

In terms of the Commission's jurisdiction, please be advised that the Respondents
employ more than 6 employees.

The discrimination alleged in this matter is direct: two (2) weeks after Mr.
Gorman filed his claim with the Office of the Attorney General (with a copy to
Respondents), and a mere four (4) days after Respondents received a letter dated May 12,
2009, from Mr. Gorman by which Mr. Gorman asserted his right to be free of
discrimination, Respondents terminated Mr. Gorman's employment. In fact, Respondent
Larson referenced Mr. Gorman's May 12th letter as "destroy[ing]" the working
relationship between Mr. Gorman and Respondents. The Commission should also be
aware, as set out in the enclosed Claim, that Respondents have not proffered any
performance or conduct-based rationale for their termination of Mr. Gorman.

# LAW OFFICES OF HARRY C. BEACH

**Intake Manager/New Claims**
**Massachusetts Commission against Discrimination**
**September 29, 2009**
**Page Two**

I enclose a pre-addressed stamped envelope, in which I ask your office to return a date-stamped copy of this letter.

Thank you.

Truly yours,

Harry C. Beach

*Enclosures*

# ROBERT GORMAN v. YANKEE CLIPPER COUNCIL, INC., BOY SCOUTS OF AMERICA, and RANDY D. LARSON

RECEIVED

SEP 3 0 2009

## STATEMENT OF CLAIM
## CHARGE OF DISCRIMINATION (Disability, Age, Retaliation)MCAD

1. My name is Robert Gorman.

2. My date of birth is October 24, 1946, which makes me 62 years old right now. I was also 62 years old in May 2009, when I was fired by my employer: Yankee Clipper Council, Inc., the Boy Scouts of America, and Randy D. Larsen, my boss at the Yankee Clipper Council (together, I will call them "Employer").

3. The position I held with my Employer was that of "District Executive," having been hired into that position in August 2006, at a salary of $3,333.00 per month plus a monthly car allowance of $250.00, a cell phone allowance, and reimbursements for work meals and mileage.

4. I am a college graduate and an experienced businessman. I am also an Eagle Scout with the Boy Scouts of America, and a recipient of the Boy Scouts' prestigious Silver Beaver Award.

5. My job performance with my Employer was good leading up to my heart attack in August 2008, at which point I was earning a salary of approximately $43,000.00/year.

6. I was an employee in good standing with my Employer until approximately August 14, 2008, when I suffered a heart attack and consequently underwent cardiac surgery.

7. As a consequence of my heart attack, I became disabled. I notified my Employer of my disability, and I was out of work through the end of 2008. I was also suffering with diabetes and coronary heart disease throughout this period, which my Employer knew.

8. I returned to work with my Employer in January 2009, although I continued to participate in cardiac rehabilitation. My doctor advised my Employer to provide me with reasonable accommodations regarding my disability (restrictions regarding the lifting of weights, and my not wearing a tie).

9. Randy Larson, Yankee Clipper Council Scout Executive, was my supervisor both before my heart attack and following my return to work in January 2009, up until the time he fired me in mid-May 2009.

10. Larson, soon after my return to work in January 2009, treated me more critically, negatively, and erratically than he had before my heart attack.

11. For example, Larson initiated a performance review of my work on approximately April 7, 2009. During the review, Larson asked me for a list of prospects ("Friends of Scouting"), and I told him that I would have the list for him by the end of the week. Larson said that was OK.

12. The next day (April 8, 2009), Larson sent me an email in which he criticized my not submitting the Friends of Scouting list the day before (even though he had told me the day before that my submitting the list by week's end was OK by him). In the same email, Larson listed 10 "critical priorities" on which I (in his view) needed his help, "critical priorities," however, that he had failed to identify or address with me during the performance review the day before.

13. I submitted my Friends of Scouting list to Larson in the morning of April 9th. Larson in turn praised me for the "excellent" list.

14. I explained to Larson on April 10th why I did not submit the Friends of Scouting list during my performance review (April 7th): I was waiting for input from the Aquila District's nominating committee, which was meeting the evening of April 8th.

15. Larson responded to me by email on April 11th, in which he claimed that my explanation about when I submitted the list to him "is simply not acceptable, nor is it believable." I understood Larson to be saying that he thought I was lying.

16. In the same email (para. 12 above) in which he addressed what he took to be my deficiencies, Larson directed me to attend a 7:30 a.m. meeting with him the following Monday morning, prior to the usual 9:00 a.m. Monday staff meeting, to discuss his "critical priorities" for me.

17. Larson told me to meet with him on Monday at 7:30 a.m. although Larson had previously approved my request to take that week off for a family vacation.

18. For several days leading up to April 22, 2009, I experienced great stress and at least two anxiety attacks as a result of Larson's shabby and erratic treatment of me.

19. On April 22, 2009, I went to my primary care physician, Dr. Gary Coles, M.D., because of the stress and anxiety attacks associated with my worrying about Larson's treatment of me. That day, Dr. Coles wrote a letter that I gave to Larson, in which Dr. Coles determined that I was suffering from "extreme stress related anxiety attacks," which were detrimental to my health. Dr. Coles advised Larson that he (Coles) would not permit me to return to work until the stress could be alleviated. Dr. Coles told me that the stress affected my cardiac condition. A copy of Dr. Coles' letter of April 22, 2009 is attached.

2

29. Larson also wrote that he was concerned about the Employer's liability if I returned to work without "full medical clearance," and that the Employer required a doctor's statement representing that I was "able to perform the essential duties of the job without restriction." Again, this told me that I would not be given reasonable accommodations for my condition.

30. Although Larson's letter was dated May 13, 2009, I received it on May 12, 2009.

31. I responded to Larson's letter by email on May 12, 2009. In my response, I pointed out to Larson that he had been very critical of my work since I returned to work in January 2009; that disability laws protected me from disability-related discrimination; and that the Employer had the duty to provide me with reasonable accommodations. A copy of my May 12th email is attached.

32. In what turned out be his last letter to me, Larson on May 16, 2009, fired me. In his letter (attached), Larson said he was "shocked and disappointed at [my letter's] content and its tenor." He also wrote:

> Clearly, any trust or ability to continue in a working relationship together has been destroyed and, therefore, I have determined that it is in the best interests of the Council to end your employment at will. Consequently, effective today, your employment has been terminated.

33. My Employer, through Larson, fired me less than two weeks after they learned that I had filed a complaint of discrimination against them.

34. My Employer, through Larson, fired me four (4) days after Larson received an email from me, in which I claimed my right to protection under the state and Federal disability laws. According to Larson, my assertion of rights "destroyed" our ability to work together. I will point out that Larson did not identify any performance- or conduct-based reason to fire me.

35. Larson's letter of May 16, 2009, stated his view that I would not be allowed to work at any other Boy Scout councils unless I could do so without restrictions or accommodations.

36. Larson continued to retaliate against me when I filed an application for unemployment benefits later in May 2009. Larson had, according to what the Department of Unemployment Assistance told me, told DUA that he had not fired me, and that I was still employed there (although on a disability leave of absence). I believe Larson lied in this respect in order to have DUA deny me unemployment benefits. After I provided DUA with Larson's termination letter of May 16, 2009, DUA awarded me unemployment benefits.

4

37. My Employer's termination of me has damaged me greatly. I have lost my job and the money and other benefits I earned from that job. My prospects at finding other work are low, as I am 62 years old and disabled. I also know I can't go back to my Employer because Larson has said that our relationship has been "destroyed" by my standing up for myself.

38. The loss of my job has caused me great stress and anxiety, to the extent that I have been treated twice at a local hospital (July 24, 2009 and August 30, 2009) for unmanageable stress, anxiety and anger. This emotional distress, my doctors tell me, has probably worsened my health. One doctor has told me that my returning to work "under a boss that previously treated [me] so poorly will aggrevate (*sic*) and impair [my] health and mental condition going forward."

I state this based upon my best information and memory, and based upon the documents I refer to above. The statements I make here are made under the pains and penalties of perjury, this 24th day of September 2009.

**Robert Gorman**

5

**Luis A. Carreiro, MD**
**Gary M. Coles, MD**
**Thorley Cook, DO**
**Eric P. Kohler, MD**
**Monica S. Woodward, MD**
**Melissa Oikle, PA-C**
**Nancy Russell, PA-C**
**Pat Schleifstein, NP**



*Franklin Primary Care*

April 22, 2009

Mr. Randy Larson
Scout Executive of Yankee Clipper Counsel

Re: Robert Gorman, DOB: 10/24/1946
    7 Wake Robin Road, Apt. 107
    Lincoln, RI

Dr. Mr. Larson:

Robert Gorman is a patient of mine last seen in the office on April 22, 2009. He has been suffering from extreme stress related anxiety attacks. I feel that given his history of diabetes and coronary artery disease, this is detrimental to his health. He should therefore not return to work until the stress can be alleviated. Please contact me for any questions.

Sincerely,

*Gary Coles*

Gary Coles, MD

GC:lm

*Tri-County Medical Associates, Inc. / Franklin Primary Care*
*440 East Central Street • Franklin, MA 02038 • 508-528-2700*
*www.tricountymedical.org • Affiliated with Milford Regional Medical Center*



# YANKEE CLIPPER COUNCIL, INC.

BOY SCOUTS OF AMERICA

April 29, 2009

Mr. Robert Gorman
7 Wake Robin Road, Apt. 107
Lincoln, RI  02865

Dear Robert:

I have received your email noting that you started sick leave again on April 22, and the fax from your physician confirming same. You have our best wishes for a speedy, complete recovery and we hope you can return to work soon.

Due to your previous sick leave last fall, you have exhausted your job guarantee and your salary continuation. Consequently, you are not eligible for salary continuation and, unless or until you return to your position on a full-time, unrestricted basis will not receive compensation beyond April 21st.

Tom Bringle, Chuck Marvin and I will cover your assignments and meetings in Aquila District for the next few weeks, and at some point soon I will have to consider my options for filling this position with a new hire. I hope you will stay in close communication with Tom, not only so that we can continue to serve Aquila during your absence but also so that we can be updated on your medical condition from time to time and to assist us in our decision as to whether we need to fill the position.

Should you believe that a different determination would be made and wish to attempt to apply for a Long Term Disability claim once again, please contact Office Manager Linda Reiber should you need any forms or other support.

Because you will not be receiving compensation during this current sick leave, effective April 22, 2009 it is your obligation to directly reimburse the Yankee Clipper Council for any medical or benefit premiums that were previously being deducted from your paycheck. Failure to do so could result in the termination of the applicable coverage. In the event that a decision is made to terminate your employment, then at that time your benefits coverage will end, you will no longer be eligible for the Council payment of your individual coverage and continuation of any medical, dental and/or vision coverage(s) that you have will only be available through COBRA at the statutory rate. Other benefits will terminate at that time. However, you have 30 days from the date your employment terminates to request coverage for any group life insurance or Scout Executives' Alliance be converted to individual coverage. Any group life insurance, SEA or other benefits will either terminate at that time or, where applicable, conversion to individual coverage may be offered to you.

36 Amesbury Road, Haverhill, MA  01830-2802
978-372-0591 • 978-777-4333
Fax 978-373-9134 • Fax 978-777-4534

Page 2
Robert Gorman
April 29, 2009

Likewise, you should make arrangements with any other entity who is receiving
disbursements directly from your paycheck through payroll deductions to assure you
remain in good standing with them.

Again, we are thinking of you and hoping for your full recovery, and please let me know
how we can help you during this absence. As is council policy, any return to work
requires a doctor's statement indicating that you are able to perform the essential duties
of the job without restriction.

Sincerely,

Randy D. Larson
Scout Executive

Bob Gorman
Apartment #107
Building #7 Wake Robin Road
Lincoln, Rhode Island 02865

May 5, 2009

Massachusetts Commission Against Discrimination
Boston, MA 02108
Re: Yankee Clipper Council Boy Scouts of America, Haverhill, MA

Gentleman:

First I am making it very clear that I am charging Randy Larson the Scout Executive of the Yankee Clipper Councill with <u>Unlawful Harassment.</u> I have been harassed by Randy Larson <u>under 2 different circumstances: My age..62 and my Disability. (Heart Failure and Congestive Heart Failure.)</u>

<u>I would like Randy Larson Removed from his position as the Scout Executive for the Yankee Clipper Council and forced to retire from the profession of Scouting.</u>
In my opinion Randy really hurts our program. He does not strengthen it. His management style without question is unreasonable.

It has been my intention to retire with a  pension from Scouting until age 66.
To that end I wish to continue to be paid as though I were working until age 66.(October 24, 2012)
I would expect this continuation to include all medical, dental, and vision care, and full retirement funds.

I have sent this same package of information to the HR Department of the Boy Scouts of America..
I have asked them for their support of bring a determination against the Yankee Clipper Council and Randy Larson. (Yankee Clipper Council, BSA is located in Haverhill Massachusetts.)

To date Randy has cut me off writing "I will not be receiving compensation effective April 22, 2009." See Randy Larson's April 29th letter to me. Enclosed.

I have also enclosed a complete copy of the Yankee Clipper Handbook which says NOTHING about the council's inability to compensate me through a 2nd sickness. (What would happen if I were to have 2nd heart attack.?)

I have also included the fax from my Dr. removing me from work with the Yankee Clipper Council.


You will also find:

A complete explanation (4 pages) of what has happened to me and my employment with the Yankee Clipper Council from the Spring of 2008 until the present time. It outlines all dates as best I can remember them.

I have also included a FOS Listing of community phase (of fund Raising) people and how pleased he is with this list. As well as the latest FOS report showing that I am ahead of last year with monies and pledges brought into the Yankee Clipper Council.

The next thing you will find is his first letter to me demanding that I meet with him at 7:30 AM before the staff meeting at 9:00 AM. and you will find my return answer to him explaining what had happened after the review and my response to his email. He again wrote an email to me (enclosed) essentially calling me a liar for essentially doing what he wanted me to do. This is clearly punishment.

The next week I was on a scheduled and approved vacation, and I started to have severe anxiety attacks to including having a difficult time , and chest pain. I went to see my Dr who doubled my depression and anxiety medication and told me he was "removing me from work in the Yankee Clipper Council"

There is a lot of material here. In order to make it easier for my reader I have included the latest letters to me first. (From Randy Larson)
First  several pages of an explanation of what happened to me from the Spring 2008 forward into 2009.

(In thinking about it, I think it best and less confusing to include an outline of letters emails etc.)

This is all very painful for me. I have been in love with Scouting since I was 8 years old. I am an Eagle Scout and I hold the Silver Beaver Award besides having my Wood Badge Beads and I am a certified Day Camp Director. In my professional career I have never received less then an Expected in my performance reviews.

If I do not call attention to the management style of Randy Larson he will continue to make life miserable for the office staff and professional staff.

I have it on excellent authority that within the past 2 years Yankee Clipper Council and Randy Larson was sued by our former book keeper and she and the council settled for $75,000. This has NOT deterred him from his poor and threatening  management style.


Thanks Again,
I'll be looking forward to your response.

Bob Gorman

Outline
Materials Enclosed
Robert Gorman

---

**Cover Letter to Office of Mass Commission Against Discrimination**

**Certificate of Completion BSA
Unlawful Harassment Prevention**

**Fax Letter from Gary M. Coles MD  to Randy Larson 4/22/09**

**Randy Larson Letter to me 4/29/09
re: loss of job guarantee and continuation**

**Mat 1, 2009 Yankee Clipper FOS report**

**FOS Community Prospect List**

**Email #1 From Randy Larson**

**Email #2 From Randy Larson
and my response back to him**

**What Happened.
My story from Summer 2008
To the present time.**

**Hand Book for
Yankee Clipper Council
Professional Employees**

May 13, 2009

Mr. Robert Gorman
7 Wake Robin Road, Apt. 107
Lincoln, RI  02865

Dear Robert:

I have received your email of May 7 and just wanted to let you know that a complete
copy of your personnel file was mailed to you already in response to your request.

I hope you can appreciate that it would be inappropriate, and potentially could even
create legal concerns, if I was to administer Yankee Clipper Council's personnel policies
and procedures differently for you than I would for any other employee.  There is a
rolling 24-month period that applies to job guarantee and salary continuation benefits.
This means that entitlement to return to a job is **only** "guaranteed" for the number of days
specified based on tenure, during a rolling 24-month period – you have had multiple
absences during the past 24 months that (cumulatively) exceeded both the job guarantee
and salary continuation benefits.

Therefore, as I had previously indicated, due to your previous sick leave last fall, you
have exhausted your job guarantee and your salary continuation and are not eligible for
salary continuation and, therefore, cannot receive compensation beyond April 21 if you
have not returned to full, unrestricted duty at the council.

While we all hope for your full recovery and ability to return to employment, I am
concerned for both your health and for the potential liability of the council if you should
return to work before having full medical clearance from your physician; therefore please
recall that it is council policy that any return to work requires a doctor's statement
indicating that you are able to perform the essential duties of the job without restriction.

Sincerely,


Randy D. Larson
Scout Executive

From: BGorman066
To: RLarson@bsamail.org
Sent: 5/12/2009 3:55:08 P.M. Eastern Daylight Time
Subj: Response to your Letter 4/12/09

Robert Gorman
Apartment #107
7 Wake Robin Road
Lincoln, RI 02865
May 12, 2009


Randy Larson
Scout Executive
Yankee Clipper Council
Boy Scouts of America
36 Amesbury Road
Haverhill, MA 01830

Dear Mr Larson:

As I told you I would, I would write to update my situation for you.

In response to your letter dated May 13th, which - oddly - I received from
your office May 12th, I agree that you should be concerned about
liability, but perhaps you should consider it in another light than the one
you have considered it in so far. Until my heart attack in August 2008
and resulting medical treatment since then, my work performance record
with BSA was spotless, as evidenced by the personnel file recently
produced to me.

When I returned to work in January 2009, your office began to scrutinize
my performance much more closely and critically than it had ever done

before. This unfair scrutiny resulted in a merely "satisfactory" evaluation for my first quarter's work, a proposed corrective action in mid-April 2009. and your calling me a "liar" on April 11, 2009. Immediately after experiencing this unfair harshness and your implicit threats, I began to experience adverse cardiac symptoms again. Since April 21, these symptoms have forced me out of work.

The liability you may not have considered is two-fold. First, I am working with my health care provider to establish that my recent disability is work-related, and therefore compensatable under Massachusetts' workers compensation laws.

Second, I am advised by retained counsel that BSA cannot discriminate against me because of my cardiac disability. The treatment I have received at your hands since my return to work in January 2009 indicates that my disability and absence from work in the second half of 2008 were not acceptable to you.

Moreover, Yankee Clipper Council,BSA has the affirmative obligation to provide me with reasonable accommodations upon my return to work. I continue to work with my doctors to identify the kind of accommodations I will need. Once they have been identified, having due regard for my disability, I will submit them to you.

In sum, I agree that the liabilities of Yankee Clipper Council, BSA should be considered. My only hope is that the Yankee Clipper Council,BSA will take seriously its obligations to me under the workers comp. statute and under Federal and state disabilities law.

I will be in touch in 10 days' time to update you regarding my status, and the information my doctors have provided to me.

Thank you.
Robert Gorman

A Good Credit Score is 700 or Above. See yours in just 2 easy steps!

A Good Credit Score is 700 or Above. See yours in just 2 easy steps!

May 16, 2009

Mr. Robert Gorman
7 Wake Robin Road, Apt. 107
Lincoln, RI  02865

Dear Robert:

I received your email of May 12 and was shocked and disappointed at its content and its tenor.  I have never doubted your statement and that of your doctor that you are unable to perform those duties due to your medical condition; however, your response is to accuse me of having previously called you a "liar;" accuse me of "unfair harshness" and "implicit threats" and you suggest that I caused you to experience adverse cardiac symptoms again.

Bob, I have attempted to work with you to improve your performance and had hoped that your professional experience would be an asset to the Yankee Clipper Council.  Despite the expiration of your job guarantee and salary continuation periods and the challenges that all of us in Scouting face in this current economic environment, I have kept you on an "inactive" status so that you could continue to receive benefits in the hopes that you would be returning to the Council after your recovery.

Clearly, any trust or ability to continue in a working relationship together has been destroyed and, therefore, I have determined that it is in the best interest of the Council to end your employment at will.  Consequently, effective today, your employment has been terminated.  Any insurance benefits you are receiving will end at midnight today.  You will be sent written communication concerning any continuation/conversion privileges and rights under the basic retirement plan. Should you have any benefits-related questions, please contact the BSA Benefits Center at 1-800-444-4416.

If you apply (or have applied) and are determined to be eligible for Long Term Disability, you may continue certain benefits you now receive.  Your retirement account (if you are participating) will remain in suspension with no further contributions due.  The time of your disability will be counted as credited service in calculating monthly income at retirement.

Your termination from the Yankee Clipper Council does not bar you from applying for other openings within Scouting at other councils that you are qualified to fill after you are medically able to return to work.

Sincerely,


Randy D. Larson
Scout Executive